**EDELSBERG LAW, P.A.**
Scott Edelsberg, Esq. (CA Bar # 330090)
scott@edelsberglaw.com
1925 Century Park East, Suite 1700
Los Angeles, CA 90067
Telephone: (305) 975-3320

**KALIELGOLD PLLC**
Jeffrey D. Kaliel (SBN 238293)
1100 15th Street NW, 4th Floor
Washington, D.C. 20005
Telephone: (202) 280-4783
jkaliel@kalielpllc.com

**KALIELGOLD PLLC**
Sophia G. Gold (SBN 307971)
950 Gilman Street, Suite 200
Berkeley, CA 94710
Telephone: (202) 350-4783
sgold@kalielgold.com

*Counsel for Plaintiff*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LEAH WALTON, *Individually and On Behalf of All Others Similarly Situated*,<br><br>    Plaintiff,<br><br>  v.<br><br>CAPITAL ONE, N.A.,<br><br>    Defendant. | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

## **CLASS ACTION COMPLAINT**

Plaintiff Leah Walton ("Plaintiff") brings this action on behalf of herself and all others similarly situated against Defendant Capital One, N.A. ("Capital One" or "Defendant"), and states:

## I.   NATURE OF THE ACTION

1.    Every year, more than 2 million consumers fall victim to financial fraud.[1]

2.    Plaintiff Leah Walton is one such victim. Immediately after Plaintiff learned that her debit card was stolen out of her car along with other personal items, she alerted Capital One to the loss and submitted a fraud claim with substantial factual proof identifying nearly $1,500 in unauthorized charges. Capital One offered her a "provisional credit" for the fraudulent amount.

3.    Later, Capital One summarily denied Plaintiff's claim on the grounds that it "didn't find an error," and closed Plaintiff's checking account.

4.    Plaintiff was given no opportunity to contest Capital One's reasoning for denying the fraud claim or any explanation as to how the Bank reached its conclusion. Despite Plaintiff's request for an explanation and further review, and submitting a police report for the stolen debit card, Capital One mechanically rejected Plaintiff's claim without performing a reasonable investigation and instead,

---

[1] Federal Trade Commission, "New FTC Data Show Consumers Reported Losing Nearly $8.8 Billion to Scams in 2022." (February 2023).

issued form denial letters devoid of any factual findings or documentation from its alleged investigation.

5. Capital One's superficial rejection of Plaintiff's bona fide fraud claim without conducting a proper investigation and the use of form denial letters without any written explanation or supporting documentation violates federal law.

6. Long ago, Congress decided financial institutions—and not consumers—must bear the risk of loss in cases of financial fraud. Financial institutions like Capital One are therefore required to refund all timely reported fraud losses to consumers unless the financial institution can affirmatively demonstrate that the disputed transactions were in fact authorized.

7. If a financial institution like Capital One denies a fraud claim, it must provide a substantive written explanation of its findings and must make the supporting documentation available to any consumer who requests it. Thus, by statute, once fraud is reported, Capital One—not consumers—bears the burden of proving fraud did not occur. Capital One must meet this burden with evidence and must explain its factual findings in writing.

8. This requirement is more than a formality: financial institutions must explain their findings and provide the requested documentation so that consumers like Plaintiff can refute the financial institution's conclusions. Without such information, consumers like Plaintiff are hamstrung by Capital One's black-box decision-making.

9. In sum, Capital One has adopted a fraud investigation process that systematically flips the statutory burden on its head. Capital One denies transactions it unilaterally deems to be not an "error" without providing any substantive explanation as to how or why it has satisfied its burden of demonstrating that the disputed charges were in fact authorized. In practice, this creates a Bank versus the consumer system in which the Bank always wins. This is precisely the type of system federal law was designed to prevent

10. Moreover, Capital One's conduct also constitutes an express breach of its contract with accountholders. Capital One promises that consumers will not be liable for their losses if their card is lost or stolen if the consumer timely reports the lost or stolen card. But Capital One routinely fails to honor its promises.

11. Capital One's disregard of its statutory and contractual obligations subjects its accountholders like Plaintiff who similarly fell victim to debit card theft to shoulder hundreds of dollars in fraudulent purchases that they did not authorize.

12. Plaintiff brings this action on behalf of herself and a proposed class of all other similarly situated Capital One accountholders who notified Defendant that one or more charges on their account were unauthorized and were summarily denied reimbursement without a full investigation and explanation because Capital One unilaterally deemed their transactions to be not an "error"—a standard which unlawfully reverses the evidentiary burden and results in the denial of

reimbursement for fraud losses which, by statute and its contract, should have been covered by Capital One.

13.     Plaintiff seeks seek actual damages, punitive damages, and an injunction on behalf of the general public to prevent the Bank from continuing to engage in its illegal and/or unfair practices as described herein.

## II.     JURISDICTION AND VENUE

14.     This Court has original jurisdiction over the action under the Class Action Fairness Act ("CAFA") of 2005. Pursuant to 28 U.S.C. §§ 1332(d)(2) and (6), this Court has original jurisdiction because the aggregate claims of the putative class members exceed $5 million, exclusive of interests and costs, there are at least one hundred (100) people in the putative class, and at least one member of the proposed class is a citizen of a different state than Capital One.

15.     Venue is proper in this district pursuant to 28 U.S.C. § 1391 because Capital One is subject to personal jurisdiction here and regularly conducts business in this district, and because a substantial part of the events or omissions giving rise to the claims asserted herein occurred in this district.

## III.    PARTIES

16.     Plaintiff Leah Walton is a citizen and resident of Santa Cruz, California and was a  Capital One checking accountholder

17.     Defendant Capital One, N.A. is a national bank with its headquarters and principal place of business located in McLean, Virginia. Among other things,

Capital One is engaged in the business of providing retail banking services to consumers, including Plaintiff and the members of the putative class, which includes the issuance of debit cards for use by its customers in conjunction with their checking accounts. Capital One operates banking centers and thus, conducts business throughout the United States, including within this district.

## IV.    FACTUAL ALLEGATIONS

### A.    Plaintiff Walton Was The Victim of Debit Card Fraud

18.    More than 2 million consumers are the victims of financial fraud every year.[2]

19.    Consumers' fraud losses are expected to reach $165 billion in the next decade as scammers deploy more sophisticated tools and techniques.[3]

20.    Plaintiff Leah Walton had a Capital One checking account since approximately 2016. In March 2023, she was a victim of debit card fraud.

21.    On or around March 1, 2023, Plaintiff discovered that her car window had been smashed. Her Capital One debit card was stolen from her car along with her phone, driver's license, and other cards. She subsequently noticed several unauthorized transactions had occurred on her account.

22.    Without a phone or access to her bank account to purchase a new phone, Plaintiff was unable to immediately report the fraud. A few days later, however,

---

[2] Federal Trade Commission, "New FTC Data Show Consumers Reported Losing Nearly $8.8 Billion to Scams in 2022." (February 2023).

[3] The Nilson Report, "Payment Card Fraud Losses Reach $32.34 Billion." (December 2022).

Plaintiff borrowed a friend's phone to call Capital One and notify the Bank of her stolen debit card. But Capital One informed her that since she was calling afterhours nobody was available to report her claim. The next day she called again and received the same response.

23. On her third attempt, after borrowing a friend's phone again, Capital One indicated that it could not verify that Plaintiff was indeed the person calling, since she was not calling from her recognized phone number and lacked a driver's license (since it was stolen with her phone and debit card).

24. Finally, after borrowing money to pay for a phone with her number, Plaintiff alerted Capital One that the card was stolen on March 1, 2023.

25. Upon obtaining a new phone, Plaintiff realized she had numerous emails from Capital One asking her to verify suspicious charges starting on or around March 2, 2023 i.e. one day after her debit card was stolen. Plaintiff never verified any of the suspicious charges Capital One flagged. Yet Capital One still allowed them, despite being on notice that Plaintiff's card had been stolen (albeit no "official" claim for her stolen card had been open due to Capital One's bureaucratic system which made it notoriously difficult for Plaintiff to file her claim).

26. So, again, Plaintiff  called Capital One to submit a claim of unauthorized debit card activity for a total of approximately $1,500 in fraudulent purchases.

27.     Plaintiff submitted to Capital One a detailed account as to why these unauthorized transactions were fraudulent purchases.

28.     On March 21, 2023—shortly after Plaintiff submitted her fraud claim—Capital One sent an email informing Plaintiff of its decision concerning the fraud claim in which it concluded that it "didn't find an error." The email included no additional detail as to the reason the claim was denied:



29.     To date, Plaintiff has not been refunded any of the $1,500 in fraudulent purchases.

30.     Indeed, despite Plaintiff submitting detailed information to prove she incurred unauthorized transactions, and filing a police report documenting the same, Capital One flatly refused to find any "error" occurred and did so without providing any substantive explanation or justification. It was Capital One's burden to prove that these disputed transactions were authorized—not Plaintiff's—and its failure to do so is unlawful and unfair to Plaintiff and thousands of other consumers who have to bear the consequences of stolen funds in unlimited sums.

31.     Instead of protecting Plaintiff from unauthorized transactions, on March 23, 2023, Plaintiff received notice from Capital One that it was closing her checking account and claimed it is entitled to close her accounts at any time for any reason.

32.     When Plaintiff called Capital One for an explanation of her fraud denial and account closure, she was informed by Capital One's agent that her claim had been denied because it aligned with previous spending patterns and that they were in fact valid and the claim is now resolved.

33.     While some of the fraudulent charges were made at a gas station near Plaintiff's work that she frequents often, there were many other fraudulent charges too that Capital One chose to ignore.

34. As more fully explained below, despite Capital One's obligations under the EFTA to promptly credit Plaintiff's account, and its contractual promises that she would not be liable for fraudulent charges, Capital One refused to reimburse the amounts of the stolen funds.

**B. Capital One Flouts the Requirements of the Electronic Funds Transfer Act Regarding Its Investigation of Fraudulent and Unauthorized Debit Card Transactions**

35. Congress established the Electronic Funds Transfer Act (the "EFTA"), 15 U.S.C. §§ 1693, *et seq.* to guarantee strong protections for consumers who engage in electronic fund transfers with debit cards. Congress' purpose in enacting the EFTA was to "provide a basic framework establishing the rights, liabilities, and responsibilities of participants in electronic fund and remittance transfer systems." *Id*. § 1693(b).

36. EFTA is a remedial statute and reflects a congressional policy determination about who should bear the loss for unauthorized electronic fund transfers. Its primary objective is "the protection of individual consumers engaging in electronic fund transfers ["EFTs"] and remittance transfers." 12 C.F.R. § 1005.1(b).

37. Among the widespread protections afforded under these statutes, financial institutions like Capital One are required to maintain thorough practices for error resolution, including to promptly investigate fraud claims, to provide consumers with substantive written explanations of its investigations and

conclusions, to limit consumer liability for unauthorized transactions, and, if ultimately denying those fraud claims, to bear the burden of proving that a consumers' disputed transactions were in fact authorized.

38.     The EFTA requires that financial institutions limit consumer liability for unauthorized electronic funds transfers to $50 if the consumer notifies the bank within two business days after learning of the loss or theft of an access device such as a debit card. 12 C.F.R. § 205.6(b)(1).

39.     Consumer negligence plays no role in determining the consumer's maximum liability. For example, if a consumer wrote their pin number on a debit card which was used by a third party to initiate an unauthorized transaction, the Bank would still have an error resolution obligation to reimburse the consumer. Comment to 12 C.F.R. § 1005.6(b) – 2.

40.     The EFTA places the burden of proof on the financial institution to demonstrate that challenged transfers were authorized or, if they were unauthorized, that the consumer can be held liable for them. 15 U.S.C. § 1693g(b).

41.     Specifically, under Section 1693g(b), the financial institution must show that the disputed transfer was authorized:

> BURDEN OF PROOF.--In any action which involves a consumer's liability for an unauthorized electronic fund transfer, the burden of proof is upon the financial institution to show that the electronic fund transfer was authorized or, if the electronic fund transfer was unauthorized, then the burden of proof is upon the financial institution to establish that the conditions of liability set forth in subsection (a) have been met, and, if the transfer was initiated after the effective date of section 905, that the disclosures required to be made to the consumer

under section 905(a)(1) and (2) were in fact made in accordance with such section.

42.     As a Federal Reserve Board Examiner has explained, "if the institution cannot establish the disputed EFT transaction was authorized, the institution must credit the consumer's account."[4]

43.     Capital One explicitly reverses that burden, regularly denying claims on grounds that it "didn't find an error".

44.     Further, by statute, Capital One is required to support any denial with a written explanation of its findings and is required to provide copies of the documents it relied upon in concluding that the disputed transaction was authorized. Specifically, pursuant to 15 U.S.C. § 1693f(d) and 12 C.F.R. § 1005.11(d), Capital One must provide a written explanation detailing the results of its investigation:

> **Written explanation.** The institution's report of the results of its investigation shall include a written explanation of the institution's findings and shall note the consumer's right to request the documents that the institution relied on in making its determination. Upon request, the institution shall promptly provide copies of the documents.

45.     Capital One fails to comply with its statutory obligations by failing to provide written explanations of its denials. Instead, Capital One routinely denies claims without any explanation whatsoever, stating only its conclusion in a form email that it "didn't find an error."

---

[4] Scott Sonbuchner, *Error Resolution and Liability Limitations Under Regulations E and Z: Regulatory Requirements, Common Violations, and Sound Practices*, Consumer Compliance Outlook (2021), available at https://www.consumercomplianceoutlook.org/2021/secondissue/error-resolution-and-liability-limitations-under-regulations-e-and-z/.

46.     Capital One's boilerplate denial letters flip the burden of proof onto consumers to *disprove* the supposed reasonableness of the Bank's investigation. But EFTA puts the burden of proof on financial institutions to show that disputed charges were authorized. 15 U.S.C. § 1693g(b).

47.     Further, the EFTA prohibits financial institutions from using accountholder agreements that waive any rights conferred by the statute. 15 U.S.C. § 1693.

48.     Plaintiff held up her end of the Deposit Agreement & Disclosures by notifying Capital One within 60 days of the unauthorized transactions. Deposit Agreement & Disclosures, p. 19.

49.     Capital One did not grant itself the contractual right to conclude it didn't find any errors without any substantive explanation of its findings. *See id.*

50.     In these ways, Capital One attempts to use its Deposit Agreement & Disclosures to waive the requirements of the EFTA, in further violation of the statute.

51.     In sum, by denying Plaintiff's claim because it "didn't find an error" and by failing to provide a written explanation of its findings to support its denial, Capital One flouts the EFTA's investigation and error resolution requirements and ultimately fails to satisfy its burden of demonstrating that the unauthorized transactions as reported by Plaintiff were in fact authorized. Further, by doing the

foregoing in reliance on its Deposit Agreement & Disclosures, Capital One violates 15 U.S.C. § 1693*l*.

**C.     Capital One Breaches Contract Promises that Fraudulent and Unauthorized Debit Card Transactions Come with Zero Fraud Liability, or at a Minimum, Limit Liability**

52.     Capital One's Deposit Agreement & Disclosures makes a simple, straightforward  promise for debit card transactions:

**Liability for unauthorized transfers**.

CONTACT US IMMEDIATELY if you believe that an unauthorized transfer has occurred or may occur concerning your account(s) or that your E-Identification is no longer secure or confidential or may have been used without your permission. Telephoning us at 1-800-655-2265 is the best way of keeping your losses to a minimum. You may also notify us through our website (www.capitalone.com/bank).

You could lose all the money in your account (including any accounts linked to this account and the maximum amount of your line of credit under the Overdraft Line of Credit if you have one) if you take no action to notify us of the unauthorized transfer or the loss of security or unauthorized confidentiality of your E-Identification. If you notify us of the loss, your liability for unauthorized transfers will be as follows:

    A.     We have decided not to impose any liability on you even though the law says we could (up to $50) if someone used your E-Identification without your permission and you contact us within two (2) business days after you learn of the loss on unauthorized use.

    B.     If you do NOT tell us within two (2) business days and we can prove that we could have prevented the loss had you contacted us, you could lose as much as $500.00.

    C.     If your statement shows transfers that you did not make and you do NOT contact us within sixty (60) days after the statement was made available to you, you may not get back any money lost after the sixty (60) days if we can prove that your contacting us would have prevented those losses.

> We can extend these time periods if extenuating circumstances such as a long trip or hospital stay kept you from notifying us.

Deposit Agreement & Disclosures, p. 19.

53. Plaintiff Walton knew her debit card had been stolen, and duly notified Capital One of the loss of her debit card as soon as possible after learning of the loss.

54. Despite this notification, Plaintiff Walton's losses total close to $1,500.

55. By imposing liability on Plaintiff for the losses, Capital One breached its contract.

56. Capital One thus unlawfully vests itself with unilateral discretion to confirm or deny whether a fraudulent transaction occurred.

57. Capital One has significant discretion in conducting these investigations and has an obligation to conduct these investigations in good faith.

58. Capital One fails to conduct these investigations in good faith, and instead summarily denies bona fide fraud claims based on shoddy investigations, completed behind closed doors and without any explanation.

59. Capital One's conduct breaches the covenant of good faith and fair dealing.

## V. CLASS ACTION ALLEGATIONS

60. Plaintiff brings this action on her own behalf and on behalf of all others similarly situated. The proposed Class includes:

> All holders of a Capital One checking account who, within the applicable statute of limitations preceding the filing of this lawsuit up until the date of class certification, timely notified Capital One that one

or more charges on their account were unauthorized and were denied reimbursement by Capital One

61.     Additionally, Plaintiff proposes a California subclass for the foregoing class ("California Subclass").

62.     Excluded from the Class is Defendant, its subsidiaries and affiliates, their officers, directors and members of their immediate families and any entity in which Defendant has a controlling interest, the legal representatives, heirs, successors or assigns of any such excluded party, the judicial officer(s) to whom this action is assigned, and the members of their immediate families.

63.     The Class and the state subclasses defined above are collectively referred to herein as the "Class." Plaintiff reserves the right to modify or amend the definition of the proposed Class and/or to add a subclass(es), if necessary, before this Court determines whether certification is appropriate.

64.     **Numerosity (Rule 23(a)(1)).** The proposed Class is numerous such that joinder is impracticable. Upon information and belief, and subject to class discovery, the Class consists of thousands of members or more, the identity of whom are within the exclusive knowledge of and can be ascertained only by resort to Capital One's records. The proposed Class is also sufficiently ascertainable because Capital One has the administrative capability through its computer systems and other business records to identify all members of the proposed Class, and such specific information is not otherwise available to Plaintiff.

65. **Commonality (Rule 23(a)(2)).** The questions here are ones of common or general interests such that there is a well-defined community of interest among the proposed Class members. These questions predominate over questions that may affect only individual Class members because Capital One has acted on grounds generally applicable to the proposed Class. Such common legal or factual questions include, but are not limited to:

a. Whether Capital One breached its contract with accountholders or breached the covenant of good faith and fair dealing;

b. Whether Capital One's practice of denying fraud claims constitutes an unfair, misleading, or unlawful business practice under California's Unfair Competition Law (the "UCL"), Cal. Bus. & Prof. Code § 17200, *et seq*

c. Whether Plaintiff and other members of the proposed Class are entitled to injunctive relief to enjoin Capital One's from its unlawful business practices described herein; and

d. Whether Plaintiff and other members of the proposed Class have sustained damages as a result of Capital One's wrongful business practices described herein and the measure of damages.

66. **Typicality (Rule 23(a)(3)).** Plaintiff's claims are typical of the claims of the other proposed Class members in that they arise out of the same wrongful business practice by Capital One, as described herein.

67. **Adequacy (Rule 23(a)(4)).** Plaintiff is more than an adequate representative of the proposed Class in that he has suffered damages as a result of Capital One's improper business practices. Additionally:

e. Plaintiff is committed to the vigorous prosecution of this action on behalf of herself and all others similarly situated and has retained competent counsel experienced in the prosecution of class actions and, in particular, class actions on behalf of consumers against financial institutions;

f. There is no conflict of interest between Plaintiff and the unnamed Class members;

g. Plaintiff anticipates no difficulty in the management of this litigation as a class action; and

h. Plaintiff's legal counsel has the financial and legal resources to meet the substantial costs and legal issues associated with this type of litigation.

68. **Predominance & Superiority (Rule 23(b)(3)).** Plaintiff's proposed class action is the superior method for resolving this dispute because it is impracticable to bring proposed Class members' individual claims before the Court. Class treatment permits a large number of similarly situated persons or entities to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of evidence, effort, expense, or the possibility of inconsistent or contradictory judgments that numerous individual actions would

engender. The benefits of the class action mechanism, including providing injured persons or entities with a method for obtaining redress on claims that might not be practicable to pursue individually, substantially outweigh any difficulties that may arise in the management of this class action. Plaintiff knows of no difficulty to be encountered in the maintenance of this action that would preclude its maintenance as a class action.

69. **Final Declaratory or Injunctive Relief (Rule 23(b)(2)).** Plaintiff also satisfies the requirements for maintaining a class action under Rule 23(b)(2). Defendant has acted or refused to act on grounds generally applicable to each of the Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to each Class as a whole.

70. **Particular Issues (Rule 23(c)(4)).** Plaintiff also satisfies the requirements for maintaining a class action under Rule 23(c)(4). Plaintiff's claims consist of particular issues that are common to all members of the Classes and are capable of class-wide resolution that will significantly advance the litigation.

## VI. CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
**Breach of Contract Including Breach of the Covenant of Good Faith and Fair Dealing
(On Behalf of Plaintiff and the Class and California Subclass)**

71. Plaintiff incorporates the preceding allegations by reference as if fully set forth herein.

72.     Plaintiff and members of the Class contracted with Capital One for checking account services, as embodied in the Deposit Agreement & Disclosures.

73.     Capital One breached the terms of its contract with consumers when, as described herein, Capital One failed to fairly investigate reported erroneous and fraudulent transactions and failed to reimburse accountholders for fraud losses incurred on debit card transactions.

74.     Further, under the law of each of the states where Capital One does business, an implied covenant of good faith and fair dealing governs every contract. The covenant of good faith and fair dealing constrains Capital One's discretion to abuse self-granted contractual powers.

75.     This good faith requirement extends to the manner in which a party employs discretion conferred by a contract.

76.     Good faith and fair dealing, in connection with executing contracts and discharging performance and other duties according to their terms, means preserving the spirit—not merely the letter—of the bargain. Put differently, the parties to a contract are mutually obligated to comply with the substance of their contract in addition to its form. Evading the spirit of the bargain and abusing the power to specify terms constitute examples of bad faith in the performance of contracts.

77.     Subterfuge and evasion violate the obligation of good faith in performance even when an actor believes his conduct to be justified. A lack of good faith may be overt or may consist of inaction, and fair dealing may require more than

honesty. Other examples of violations of good faith and fair dealing are willful rendering of imperfect performance, abuse of a power to specify terms, and interference with or failure to cooperate in the other party's performance.

78.     Capital One breached the covenant of good faith and fair dealing when it failed to fairly investigate reported erroneous and fraudulent transactions and failed to reimburse accountholders for fraudulent losses incurred on debit card transactions.

79.     Each of Capital One's actions were done in bad faith and were arbitrary and capricious.

80.     Plaintiff and members of the Class have performed all of the obligations imposed on them under the contract.

81.     Plaintiff and members of the Class have sustained monetary damages as a result of Capital One's breaches of the contract and covenant of good faith and fair dealing.

<u>**SECOND CLAIM FOR RELIEF**</u>
**Violation of California's Unfair Competition Law ("UCL")**
**Cal. Bus. & Prof Code § 17200, *et seq*.**
**(On Behalf of Plaintiff and the California Subclass)**

82.     Plaintiff incorporates the preceding allegations by reference as if fully set forth herein.

83.     Plaintiff and members of the putative class have standing to pursue a cause of action against Defendant for unfair, unlawful, and fraudulent business acts

or practices because they have suffered an injury-in-fact and lost money due to Defendant's actions and/or omissions as set forth herein.

84. Defendant's conduct is unlawful under Bus. & Prof. Code § 17200 *et seq.* because it is in violation of the EFTA and Regulation E, as discussed above.

85. Defendant's conduct described herein is "unfair" under Bus. & Prof. Code § 17200 because it violates public policy and is immoral, unethical, oppressive, unscrupulous, and/or substantially injurious to consumers, and any utility of such practices is outweighed by the harm caused to consumers, including to Plaintiff, the Class, and the public. Specifically, Capital One wrongfully denies consumers' fraud claims and disputes regarding unauthorized transactions after failing to properly investigate those claims, failing to provide adequate written explanation for the denial of those claims, and by ultimately failing to satisfy its burden to prove that the disputed transactions were in fact authorized. The financial harm to consumers as a result of Capital One's wrongful business practices is substantial in that consumers are forced to pay hundreds of dollars for unauthorized purchases arising from fraud or theft that was out of their own control.

86. Defendant's conduct described herein is "fraudulent" under Bus. & Prof. Code § 17200 because Capital One's business practices have misled Plaintiff and the Class and will continue to mislead them in the future.

87. Plaintiff relied on Capital One's misrepresentations about its fraud policies insofar as Plaintiff believed she would be refunded for unauthorized

transactions if her debit card was lost or stolen. By misrepresenting material facts as to its policies, Capital One deceived Plaintiff and the class into making banking decisions they otherwise would not make.

88.     As a direct and proximate result of Capital One's misconduct, Plaintiff and the Class have suffered and will continue to suffer harm.

89.     Plaintiff and the putative Class are entitled to restitution of all funds wrongfully obtained by Capital One through their unlawful and unfair business practices as described herein.

90.     Defendant's wrongful conduct is ongoing and is part of a pattern or generalized course of conduct repeated on thousands of occasions yearly.

91.     Plaintiff remains a Capital One accountholder and as such may be subject to the same wrongful conduct in the future unless Capital One is enjoined. Pursuant to Bus. & Prof. Code § 17203, Plaintiff seeks an injunction on behalf of the general public enjoining Defendant from continuing to engage in the unfair and unlawful business practices described above, or any other act prohibited by law.

92.     Additionally, Plaintiff and the putative Class members seek an order requiring Defendant to pay attorneys' fees pursuant to Cal. Civ. Code § 1021.5.

## VII.    RELIEF REQUESTED

WHEREFORE, Plaintiff demands judgment against Capital One for herself and the proposed Class members as follows:

a. Certifying the proposed Class, appointing Plaintiff as representative of the Class, and appointing Plaintiff's counsel as class counsel for the proposed Class;

b. Declaring that Capital One's policies and practices described herein constitute a breach of contract and breach of the covenant of good faith and fair dealing;

c. Declaring that Capital One's policies and practices described herein constitute violations of the consumer protection statutes described herein;

d. Enjoining Capital One from the wrongful conduct as described herein on behalf of the general public;

e. Awarding actual damages and statutory damages in an amount according to proof;

f. Awarding treble damages, if permitted by law;

g. Awarding pre-judgment interest at the maximum rate permitted by applicable law;

h. Reimbursing all costs, expenses, and disbursements accrued by Plaintiff in connection with this action, including reasonable attorneys' fees, costs, and expenses, pursuant to applicable law and any other basis; and

i. Awarding such other relief as this Court deems just and proper.

## VIII.  JURY DEMAND

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff, on behalf of herself and the proposed Class, demands a trial by jury on all issues so triable.

Dated:       May 9, 2024                Respectfully submitted,

**EDELSBERG LAW, P.A.**

*/s/ Scott Edelsberg, Esq.*
Scott Edelsberg, Esq.
SBN. 330090
scott@edelsberglaw.com

*Counsel for Plaintiff and the Proposed Class*